## 19085

In the Matter of C. M. BENEDICT, III, Respondent
(175 S. E. (2d) 897)

*Messrs. Daniel R. McLeod, Attorney General,* and *Irvin D. Parker, Assistant Attorney General,* of Columbia, *for Complainant.*

*Howard R. Chapman, Esq.,* of Charleston, *for Respondent.*

July 23, 1970.

*Per Curiam.*

The Board of Commissioners on Grievances and Discipline has filed with this Court its final certified report finding the respondent, Attorney C. M. Benedict, III, guilty of professional misconduct and recommending that he be suspended indefinitely. The matter is now before us as a result of a rule to show cause why the report of the Board should not be confirmed and such disciplinary order be issued as the court deems proper. The respondent is a member of the Bar of South Carolina, engaged at the times involved in the complaints in the practice of law at Charleston, and now engaged in the practice of law at Charleston and Walterboro.

The three separate complaints filed against the respondent were heard by the same panel and are now properly before this Court. The respondent has objected to the three cases being heard together; we find no merit in his contention.

It is charged that the respondent committed acts of misconduct and engaged in practices which tend to pollute the administration of justice and bring the courts and the legal profession into disrepute. The three separate complaints relate to that charge. They allege misappropriation of monies

entrusted to the respondent. The details of each complaint are outlined hereafter.

## WILKINS COMPLAINT

The facts in this case are not in serious dispute. Miss Geneva Wilkins employed the respondent in June 1964 to assist her and her mother in connection with the purchase of a home in Charleston. Miss Wilkins borrowed $2,500 and forwarded her check for that amount to the respondent on December 28, 1964, with the word "escrow" written thereon. This money was to be held by the respondent and used incident to the purchase of the home.

The respondent diverted the money to his own personal use. Thereafter, upon demand, he paid her $833 in cash and gave her on March 17, 1965 a post-dated check for $1,667. The check was returned uncollectible because of insufficient funds. At the respondent's direction the check was again deposited and again returned because of insufficient funds.

Miss Wilkins retained Bernard Fielding, a Charleston attorney, for the purpose of collecting the $1,667 remaining due her. This attorney succeeded in collecting $961.96. It is admitted that $705.04 has never been paid, though more than five years have elapsed.

## HUGHES COMPLAINT

In January 1964 Hobart B. Hughes, an attorney of Salisbury, Maryland, forwarded to the respondent for collection a judgment for $343.28 owned by the Atlantic Refining Company against Harrison B. Watson of Charleston.

A Charleston attorney also referred to respondent a judgment for $475.31 against Harrison B. Watson, owed to Duncan Brothers.

Respondent collected $350 from Mr. Watson. No funds have been paid to either the Charleston attorney who referred the Duncan account, or to Mr. Hughes who forwarded the Atlantic account. It is the contention of the respondent that no distribution was made because he did not know how to

divide the amount between the two creditors. It was the testimony of Attorney Hobart Hughes that he advised the respondent on September 11, 1967 that he had contacted the attorney for Duncan Brothers and it was satisfactory to divide the money on hand equally between the two creditors. Apparently Hughes wrote many times about the account, and the respondent responded only seldom.

On May 20, 1970, about three weeks prior to the hearing of the case in this court, the respondent deposited $350 with the Clerk of the Supreme Court. This was nearly six years after the collection was effected.

## MIDDLETON COMPLAINT
(Filed by King as Secretary, etc.)

Willie Middleton, husband of Louise P. Middleton, died October 24, 1964. The widow employed the respondent as her attorney to collect money due under insurance policies arising out of the death of her husband. Louise Middleton was 80 years old, ignorant and unable to read or write. On January 26, 1966 a check was issued by The Federal Employees Group Life Insurance Company in the amount of $4,000 and forwarded to the respondent as Mrs. Middleton's attorney. This check was placed in his attorney's account for collection. Respondent was entrusted to pay the funeral bill to the Fielding Funeral Home in the amount of $725.60 out of the money collected and held by him.

Soon after January 26, 1966 the Internal Revenue Service levied on the account for taxes he owed to the Federal Government. Thereafter he withdrew $1,715.01 and paid that amount to Mrs. Middleton; he also drew his fee in the amount of $1,500; he did not pay the $725.60 funeral bill which he was entrusted to pay. The result is that Mrs. Middleton's money has been applied toward the payment of respondent's taxes, and she still owes the funeral bill which she entrusted him to pay.

The findings of the hearing panel (adopted by the full Board) that the respondent received in trust $725.60 be-

longing to Louise P. Middleton and failed to discharge, the trust by making payment to Fielding Funeral Home, and the finding that the respondent received $705.04 in trust from Geneva Wilkins and failed to account therefor, and the finding that the respondent collected funds in the amount of $350 from Harrison B. Watson, and failed to account therefor, are fully warranted by the evidence. The conduct of the respondent is clearly in violation of Canon 11 of the Canons of Professional Ethics which reads as follows:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The trust funds which the respondent received in each of the three cases were not properly and promptly accounted for and have been used by him over a period of years for his own personal use. The respondent did not appear before the Court in response to the rule to show cause. Counsel did appear, and stated that respondent had been urged to attend. Counsel asserts that an assignment in favor of the Fielding Funeral Home, and in favor of Geneva Wilkins, had been made of respondent's interest in pending litigation in an endeavor to indemnify hereafter the loss sustained. He also argues that deposit of the $350 check with the Clerk of this Court just prior to the hearing should excuse his conduct in the Hughes case.

When an attorney acts in bad faith towards his client in detaining or misappropriating funds, the fact that restitution is promised or made will not prevent disbarment, and this is especially true where no serious effort for restitution was made until after the commencement of disbarment proceedings. Restitution may relieve an attorney

from civil liability, but such does not purge him of the offense or prove that he is a proper person to remain at the bar.

The conduct of the respondent does not involve merely one isolated incident. His conduct since 1964 in three separate transactions involving different cases at dfferent times, is completely incompatible with the professional conduct expected of members of the bar in this State.

We conclude that the respondent, C. M. Benedict, III, should be and he is hereby disbarred from the practice of law in this State. He shall, within five days of the service of this order upon him, surrender his certificate of admission to practice to the Clerk of this Court for cancellation.